UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSHUA MARCUM,

    Plaintiff,

                                                  Civil Action No.: 3:05-cv-549-J-MCR

vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.   PROCEDURAL HISTORY**

Plaintiff filed an application for supplemental security income ("SSI") on February 24, 2000, after being found disabled due to borderline intellectual functioning, dysthymia and dependent personality disorder. (Tr. 13-20). Plaintiff was found to be eligible for benefits effective February 1, 2000. (Tr. 13). A redetermination was performed using the adult standard of disability when Plaintiff achieved the age of 18 and it was determined that his disability had ceased effective February 2003. (Tr. 13). Plaintiff

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 9).

-1-

was notified on February 18, 2003 that his disability had ceased effective February 2003 and that his eligibility for benefits would terminate as of April 30, 2003. (Tr. 13). On June 10, 2003, the cessation decision was affirmed on reconsideration. (Tr. 13). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on November 5, 2004. (Tr. 14). On February 25, 2005, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 13-20). Plaintiff filed a Request for Review by the Appeals Council (Tr. 9) and presented additional medical records to the Appeals Council. (Tr. 8). The Appeals Council considered the new evidence, made the additional documents part of the record and denied Plaintiff's request for review on June 2, 2005 (Tr. 5-8), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed his Complaint in the U.S. District Court on June 16, 2005. (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     **Basis of Claimed Disability**

Plaintiff claims to be disabled since February 2003, due to borderline intellectual functioning, dysthymia and dependent personality disorder. (Tr. 15-16).

### B.     **Summary of Evidence Before the ALJ**

Plaintiff was twenty-one years of age on the date the ALJ's decision was issued. (Tr. 13). He quit highschool in the 9th grade but attained his G.E.D. (Tr. 14, 148). Plaintiff can read, write, subtract, multiply, count money, and make change. (Tr. 14). Plaintiff's only previous employment was when he worked as a part-time bagger at Food Lion, 4 hours per day, 3 or 4 days per week. (Tr. 14, 148). Plaintiff left his job at Food

Lion, claiming that he was not doing the job well, could not stay on task, and was criticized. (Tr. 14). He also could not motivate himself to work or stay focused, watching television all day instead. (Tr. 14). Plaintiff does not have a driver's license, cannot drive, and does not do housework. (Tr. 14, 149). Plaintiff takes Wellbutrin and Abilify which tend to help him focus, although Plaintiff says he cannot tell the difference when he takes his medication. (Tr. 14). Plaintiff's medical history is summarized in the ALJ's decision.

While Plaintiff's mother claims Plaintiff stopped taking his medication, and as a result, Plaintiff gets upset, trembles, and sometimes falls to the floor, medical records and the Plaintiff himself indicate he is still taking his medication. (Tr. 14). Moreover, medical records indicate his condition was improving while on these medications. (Tr. 14). Plaintiff's mother also alleges Plaintiff wants to hurt his sister and has some anger problems. (Tr. 15). Although Plaintiff's mother attempts to get Plaintiff to do chores, he ignores her. (Tr. 15). As such, she feels his medications are only minimal help. (Tr. 15).

According to Plaintiff, beginning in February of 2000, he was first found disabled as a child, due to limitations resulting from borderline intellectual functioning, dysthymia and dependent personality disorder. (Tr. 15; 141-46). At that time, Plaintiff received medication and counseling at the Child Guidance Center. (Tr. 15; 141-46). As part of the disability process, in July 1999, Plaintiff was evaluated by Peter Knox, M.Ed., Psy.D.

(Tr. 15)[2]. Dr. Knox noted that Plaintiff had a bright mood and expanded range of effect. (Tr. 15). Dr. Knox also concluded that Plaintiff did not have any self-care, communication, social functioning or concentration/persistence/task completing problems. (Tr. 15). Dr. Knox determined that Plaintiff had a current Global Assessment of Functioning ("GAF") of 75 and of 80 in the past.[3] (Tr. 15).

On January 27, 2003, Dr. Knox evaluated the Plaintiff again. (Tr. 147-53). At this time, Plaintiff was working as a bagger at Food Lion and appeared very healthy. (Tr. 148). Plaintiff had stopped going to the Child Guidance Center upon turning 18 and was not taking any medications. (Tr. 148). Plaintiff claimed to have no problem eating or sleeping. (Tr. 149). Dr. Knox noted that Plaintiff had a pleasant mood and that his quality of thinking, concentration and memory were normal. (Tr. 149). Plaintiff did not demonstrate any behavioral indication of anxiety, depression, or thought disorder. (Tr. 149).

Dr. Knox also administered the Wechsler Adult Intelligence Scale, noting that Plaintiff had a verbal IQ of 79, a performance IQ of 74, and a full scale IQ of 75. (Tr. 150). As such, Dr. Knox determined that Plaintiff's overall ability was in a borderline

---

[2] Dr. Knox's medical records from July of 1999 do not appear to be in the record. The ALJ cited to them but the only records included in the record are from Plaintiff's visit with Dr. Knox in January 2003.

[3] The GAF rates psychological, social and occupation functioning of a patient on a scale of 0-100. A score of 100 is equivalent to "superior functioning in a wide range of activities – no symptoms, with lesser functioning ability as the scale moves downward to 0. A GAF score of 70 equals to some mild symptoms e.g. depressed mood and insomnia, or some difficulty in social, occupational or school functioning, but generally functioning pretty well." (Tr. 15). "A GAF score of 60 equals moderate symptoms, or moderate difficulty in social, occupational, or school functioning." (Tr. 15).

range and diagnosed him with dysthymic disorder, borderline IQ and dependent personality.  (Tr. 150-53).  Plaintiff's GAF was 65.  Dr. Knox noted that Plaintiff was capable of managing money, lifting, and carrying.  (Tr. 150-53).  Plaintiff had no audio, visual communicative, sitting or standing limitations.  (Tr. 150-53).  Plaintiff's memory and understanding were normal, as well as his concentration and persistence.  (Tr. 150-53).  Plaintiff also lacked any social interaction or adaptation problems.  (Tr. 150-53).

Subsequently, Plaintiff visited the office of Dr. Anjail Pathak, M.D. in June 2003.  Dr. Pathak's records indicated that Plaintiff was doing well on his medication, with the exception of some minor paranoia.  (Tr. 202-10).  Plaintiff reported that he was thinking clearly, that his mood was stable, and that he was less irritable and less angry.  (Tr. 202-10).  Moreover, his condition continued to improve through August of 2003, as he became less withdrawn, less frustrated, and less paranoid.  (Tr. 202-10).

In February 2004, Dr. Pathak's office noted that Plaintiff had not been taken in for treatment and had not taken his medications in months.  (Tr. 16; 202-10).  As a result, Plaintiff had some thought disturbances and disorganized speech.  (Tr. 16; 202-10).  His lack of motivation was evident from his playing video games all day without actively seeking work.  (Tr. 16; 202-10).  However, in May 2004, the Plaintiff was back on his medications, which tended to work well with no side effects.  (Tr. 202-10).  Plaintiff's July 2004 medical records indicate that Dr. Pathak suggested Plaintiff get involved in productive activities.  (Tr. 16; 202-10).

On February 12, 2003 and May 2, 2003, the State Agency psychological experts reviewed Plaintiff's records, making the following determination:

> The claimant has organic mental disorders, affective and personality disorders. Analyzing the 'B' criteria, he was thought to have mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace. He has had no episodes of decompensation or there was insufficient evidence to establish it. The claimant's mental impairment did not satisfy the 'C' criteria of the mental listings at the initial or reconsideration levels.

(Tr. 16).

## C. Summary of the ALJ's Decision

When an individual who became eligible for benefits as a child attains their eighteenth birthday, their eligibility must be redetermined using the regulations that pertain to new adult applications explained in §§416.920(c) through (f). See 20 C.F.R. 416.987. A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent

him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, upon an age eighteen redetermination, the ALJ determined Plaintiff did not meet the requirements of a disability pursuant to the Social Security Act and was not entitled to benefits.  (Tr. 19).  At step one, the ALJ found Plaintiff had not engaged in a substantial gainful activity since the alleged onset of his disability. (Tr. 18, 19).   At step two, the ALJ held:

> [t]he evidence in the record establishes that the claimant has the following 'severe' mental impairments: history of borderline intellectual functioning, history of dysthymia and history of dependent personality disorder.  The claimant has no severe physical impairments.

(Tr. 16, 19).  Morever, at step three, the ALJ found Plaintiff suffered from no impairments listed in appendix 1 nor was Plaintiff's alleged impairments equal to any of these listed impairments.  (Tr. 17, 19).  See 20 C.F.R. 416.920(d).

The ALJ further determined that Plaintiff retained the residual functional capacity to "perform a significant range of unskilled work at any exertional level," including "simple, one to two step tasks."  (Tr. 17, 19).  The ALJ specifically concluded that "the claimant has no exertional, postural, visual, audio, environmental or manipulative limitations," noting that the claimant is only "moderately limited in his ability to

understand, remember and carry out detailed instructions." (Tr. 17). Relying upon Plaintiff's testimony, his mother's testimony, and the doctors' records, the ALJ found "the claimant is able to perform routine activities such as reading, writing, math, counting money, etc. without assistance." (Tr. 17). Furthermore, the ALJ agreed with Dr. Pathak's conclusion that Plaintiff get involved in productive activities, stating that "the claimant's impairments do not preclude the ability to understand, remember, and carry out simple instructions and make simple work-related decisions." (Tr. 17).

At step four, the ALJ determined that Plaintiff's prior work as a part-time bagger at Food Lion did not meet the definition of "past relevant work." (Tr. 18). The ALJ based this determination on the fact that Plaintiff's previous work had been too "brief" and "sporadic" to constitute "past relevant work" for the purposes of step four. (Tr. 18). Finally, at step five of the analysis, the ALJ found "the claimant's ability to perform at all exertional levels is not significantly compromised by his non-exertional limitations...[and thus] the claimant is not disabled." (Tr. 18-19). The ALJ specifically noted that there were "approximately 200 sedentary occupations; approximately 1,600 sedentary and light occupations; and approximately 2,500 sedentary, light and medium occupations, each representing numerous jobs in the national economy." (Tr. 18). Relying upon the opinion of a vocational consultant, the ALJ determined that in light of the Plaintiff's age, education, work experience and residual functional capacity, Plaintiff is capable of working in the national economy. (Tr. 19).

**D.     Evidence Presented to the Appeals Council**

After receiving the ALJ's decision, Plaintiff filed a Request for Review of Hearing Decision/Order. (Tr. 9). With it, Plaintiff provided the Appeals Council with new evidence consisting of a Mental Health Residual Functional Capacity Questionnaire completed by Plaintiff's psychiatrist, Anjail Pathak, M.D. (Tr. 211-15). Plaintiff's current appeal deals with the records from Dr. Pathak, whom Plaintiff saw only *after* he was found ineligible for Social Security benefits. Included in those records is a Mental Health Residual Functional Capacity Questionnaire completed by Dr. Pathak, which indicate that the Plaintiff is unable to perform any work on a regular and consistent basis as a result of his schizoaffective disorder. (Tr. 211-15).

The additional records from Dr. Pathak suggest that he saw Plaintiff on approximately six occasions.[4] Plaintiff first sought treatment from Dr. Pathak in March of 2003. (Tr. 212). In June 2003, Dr. Pathak's records indicate Plaintiff was doing well on his medication, thinking clearly, having a stable mood, less irritable, and less angry. (Tr. 202-10). While Plaintiff still suffered from minor paranoia in June 2003, Plaintiff's condition continued to improve through August 2003. Id. In February 2004, Dr. Pathak noted that Plaintiff suffered from some thought disturbances and disorganized speech as a result of his failure to obtain treatment or take medication for several months. Id. However, in May 2004, Dr. Pathak noticed significant improvement because Plaintiff had resumed taking his medications. (Tr. 202-10). As Plaintiff continued to improve through July 2004, his medications working properly, Dr. Pathak suggested that Plaintiff

---

[4] There appear to be records from each of the office visits. (Tr. 202-210).

get involved in productive activities.  Id.  Plaintiff's last visit to Dr. Pathak appears to be on July 6, 2004, until he returned *nine* months later on April 8, 2005 to complete a Mental Health Residual Functional Capacity Questionnaire.  (Tr. 211-215).

The Appeals Council accepted this additional evidence and considered it, however, found that the new information did not "provide a basis for changing the Administrative Law Judge's decision." (Tr. 5-7).

### III.   ANALYSIS

Plaintiff argues one issue on appeal.  Plaintiff believes the Appeals Council erred in not remanding the claim back to the ALJ upon receipt of the Mental Health Residual Functional Capacity Questionnaire Dr. Pathak prepared on April 8, 2005.  As the Commissioner correctly notes, that questionnaire was not presented to the ALJ; rather, it was provided to the Appeals Council.  As such, the issue before this Court is whether the case should be remanded to the ALJ to consider the questionnaire prepared by Dr. Pathak or whether the Appeals Council committed error.

The Eleventh Circuit has determined two instances when it is appropriate for the district court to consider evidence submitted only to the Appeals Council.  The first instance is when a case must be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of newly discovered evidence.  The second is "[w]hen the Appeals Council refuses to consider new evidence submitted to it and denies review." Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998), cert. denied, 525 U.S. 1124, 119 S.Ct. 907 (1999) (quoting, Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994)).  In such a case, the denial of review "is ... subject to

judicial review because it amounts to an error of law." Id. (quoting, Keeton, 21 F.3d at 1066). The Court will now determine whether remand under sentence six of 42 U.S.C. §405(g) is appropriate or whether the Appeals Council committed an error of law.

### A.     Sentence Six Remand

A determination of whether remand for consideration of new evidence is appropriate is a *de novo* proceeding. Cherry v. Heckler, 760 F.2d 1186, 1194 (11th Cir. 1985); Smith v. Bowen, 792 F.2d 1547, 1550 (11th Cir. 1986); Caulder v. Bowen, 791 F.2d 872, 875 (11th Cir. 1986). Sentence six of 42 U.S.C. § 405(g) provides, in pertinent part, that "the court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ... "  42 U.S.C. § 405(g).

The Eleventh Circuit has determined that before a remand is warranted based on newly submitted evidence, the claimant must establish that (1) there is new, noncumulative evidence, (2) the evidence is material (i.e. relevant and probative so that there is a reasonable possibility that it would change the administrative result), and (3) there is good cause for the failure to submit the evidence at the administrative level. Falge, 150 F.3d at 1323 (citing Cannon v. Bowen, 858 F.2d 1541 (11th Cir. 1988) and Keeton, 21 F.3d at 1067).

The evidence submitted by Plaintiff to the Appeals Council consists of medical records from Dr. Pathak ranging from March 5, 2003 through April 8, 2005.  (Tr. 202-

10).  Plaintiff is primarily concerned with the Mental Health Residual Functional Capacity Questionnaire prepared by Dr. Pathak on April 8, 2005[5]  (Tr. 211-15).

As to the first factor, the evidence is "new and noncumulative" if it sheds new light on ill-developed issues or raises issues not previously addressed in the record. Porter v. Shalala, 1994 WL 686920 *2 (N.D. Ala.1994); Blake v. Massanari, 2001 WL 530697 *8 (S.D. Ala. 2001) (both cases citing, Cherry, 760 F.2d 1186 and Milano v. Bowen, 809 F.2d 763 (11th Cir. 1987)).  Dr. Pathak's Mental Residual Functional Capacity Questionnaire does not raise issues that were previously unaddressed or ill-developed.  Indeed, the record before the ALJ contains two Mental Residual Functional Capacity Assessments ("RFC Assessment").  (Tr. 154-155A, 184-187).

The first RFC assessment was prepared February 12, 2003, while Plaintiff was working as a bagger at Food Lion.  (Tr. 154-155A).  Pursuant to that assessment, Dr. Susan Conely, Ph.D. found Plaintiff was "able to relate to others, follow directions, correct his behavior, stay on task [and] perform a single repetitive task."  (Tr. 155). Plaintiff was found "not significantly limited" in most every area, and only moderately limited in his ability to understand, remember, and carry out detailed instructions, and to accept instructions and respond appropriately to criticism.  (Tr. 154-155A).

The second RFC assessment, prepared March 2, 2003, was almost identical to the first RFC assessment except it noted: (1) Plaintiff exhibited *no* evidence of a limitation in the ability to understand and remember detailed instructions, (2) Plaintiff

---

[5] Indeed Plaintiff does not reference the medical records from Dr. Pathak dated March 5, 2003 through July 7, 2004 and the undersigned does not believe those records are necessarily helpful to Plaintiff's claim.

may be moderately limited in his ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and (3) Plaintiff was only moderately limited in his ability to set realistic goals or make plans independently of others.  (Tr. 184-187).  In fact, Patricia Boger, M.D. emphasized that Plaintiff's employer had few concerns with Plaintiff's performance at work, explaining that he was doing well at his job and able to work for Food Lion full-time if he desired.  (Tr. 186).  Accordingly, the issue of Plaintiff's residual functional capacity was well-developed and the undersigned does not find Dr. Pathak's questionnaire noncumulative simply because it differs from the opinions of the two consulting physicians.  Blake, 2001 WL 530697 *8 (finding that "'[i]ll-developed' does not mean that other doctors, . . ., reached a different conclusion").

As to the second prong, the undersigned also finds Plaintiff has not shown the new evidence is material.  "To be material, the evidence must be relevant and probative so that there is a reasonable possibility that it would change the administrative outcome."  Caulder, 791 F.2d at 877.  While the evidence is certainly relevant in that it relates to Plaintiff's ability to work and references his alleged schizoaffective disorder, which is the condition Plaintiff alleges causes his disability, Plaintiff has failed to demonstrate any reasonable possibility that this new evidence would change the administrative outcome.

The questionnaire prepared by Dr. Pathak places significant restrictions on Plaintiff's ability to work.  For example,  Dr. Pathak opined that he anticipated Plaintiff's

impairments would cause him to be absent from work more than three times a month. (Tr. 215).   However, this opinion is not supported by any of the medical records from Dr. Pathak.  In fact, once Dr. Pathak prescribed Plaintiff medication and recommended counseling, Plaintiff's condition significantly improved from March 5, 2003 through his last visit to Dr. Pathak on July 6, 2004.  Over a course of several visits, Dr. Pathak noted that the medication helped to stabilize Plaintiff's mood, decreased his irritability, anger and frustration, lessened his paranoia, and made him less withdrawn.  (Tr. 179, 208, 206, 204).   See Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.")  Additionally, Dr. Pathak's opinion conflicts with Plaintiff and Plaintiff's mother's testimony that the medication was improving his condition.  (Tr. 208).  Most tellingly, Dr. Pathak's records indicate that Plaintiff did not see Dr. Pathak again until April 8, 2005, approximately *nine* months after Plaintiff had last visited Dr. Pathak, at which time he sought to obtain a RFC assessment.  (Tr. 10, 202, 215).  Moreover, there is no indication as to whether Plaintiff was still taking his medication or seeking counseling during that nine month period prior to the April 8, 2005 RFC assessment.

     Dr. Pathak's opinion is also inconsistent with the record as a whole.  When Plaintiff was examined by Dr. Knox on several occasions, Dr. Knox determined that Plaintiff was "essentially normal," with no noteworthy problems regarding his mood, thinking, concentration, or memory.  (Tr. 149).  Dr. Knox also concluded that Plaintiff had no behavioral abnormalities and was functioning pretty well.  (Tr. 149, 152).  In addition, two State Agency psychological consultants, Dr. Conley and Dr. Boger,

conducted RFC assessments that clearly undermined the disability limitations opined by Dr. Pathak.  (Tr. 154-155A, 184-187).

While Plaintiff has made numerous subjective complaints of his inability to motivate himself, concentrate, and focus, his part-time position as a bagger undermines these assertions.  Plaintiff had the ability to do the work, as his employer explained that he performed well at work, got along well with others, exhibited no behavioral problems, always stayed on task, and had the ability to be promoted to a full-time position if he desired.  (Tr. 155).  While the ALJ did not find that Plaintiff had engaged in a substantial gainful activity, his performance at his previous job as a part-time bagger suggests he has the ability to work, which also undermines Dr. Pathak's opinion.

Accordingly, the most that can be said about the questionnaire is that it is just another opinion regarding Plaintiff's residual functional capacity, which could be rejected by the ALJ as being unsupported by medical findings, being inconsistent with two other RFC's, being inconsistent with Plaintiff's testimony during his doctor's visits about his changed condition in light of his medication and counseling, and being inconsistent with Plaintiff's proven ability to work in the national economy.   (Tr. 208).

In sum, the ALJ was provided with ample evidence regarding Plaintiff's RFC and the undersigned finds the ALJ's decision regarding Plaintiff's RFC is supported by substantial evidence.  As such, the Court is convinced there is not a reasonable possibility that Dr. Pathak's questionnaire would change the administrative outcome and remand is not appropriate.[6]

---

[6] Even though Plaintiff's Memorandum fails to satisfy the elements of remand pursuant to
(continued...)

**B.     Whether the Appeals Council Committed Error**

According to Falge, the Appeals Council commits error when it refuses to consider new evidence and then denies review. Falge, 150 F.3d at 1324 (quoting, Keeton, 21 F.3d at 1066). Accordingly, it is necessary for the plaintiff to show initially that the Appeals Council refused to consider the new evidence. Here, Plaintiff implies that at best, the Appeals Council provided a cursory review of the new evidence.

To review the Appeals Council's denial of review, courts have to look at the pertinent evidence to determine if the evidence is new and material; the kind of evidence the Appeals Council must consider in making its decision whether to review an ALJ's decision. Falge, 150 F.3d at 1324 (citing 20 C.F.R. § 404.970(b) ("Appeals Council shall evaluate the entire record including the new and material evidence submitted to it if it relates to the period on or before the date of the administrative law judge hearing decision.") and 20 C.F.R. § 416.1470(b) (same)). As stated previously, the Court has determined that the new evidence presented is not material and therefore, the Appeals Council did not commit error. Accordingly, the Commissioner's decision denying Plaintiff benefits is due to be affirmed.

---

[6](...continued)
42 U.S.C. § 405(g), he may not be completely barred from using this new evidence. As this Court has noted, "evidence acquired after the decision of the administrative law judge issues may be introduced through a renewed application for disability benefits predicated upon deterioration of the claimant's condition since the time of the original hearing." Callahan v. Barnhart, 186 F.Supp.2d 1219, 1230, n.4 (M.D. Fla. 2002) (citing, Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997);Sanchez v. Secretary of Health & Human Servs., 812 F.2d 509, 511-12 (9th Cir. 1987); Johnson v. Heckler, 767 F.2d 180, 183 (5th Cir. 1985); Szubak v. Secretary of Health & Human Servs., 745 F.2d 831, 833 (3rd Cir. 1984)).

**IV.     CONCLUSION**

For the foregoing reasons, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's decision.  Thereafter, the Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  10th  day of March, 2006.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record